

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wm. J. Tucker, Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. O-3811
Re: The validity of Section 5
of H. B. 186 of the 47th
Leg. in the particulars
described.

We are pleased to comply with your request for an
opinion from this department upon the validity of Section 5
of House Bill No. 186 of the Forty-seventh Legislature.

Section 5 of the Bill reads as follows:

"Sec. 5. That portion of the State lying
between the Rio Grande River and a line extend-
ing from a point on the Rio Grande River North
along the common boundary line of Zapata and
Starr Counties to the South boundary line of
State Highway 4; thence along the South boundary
line of the right of way of State Highway 4 to
a point where said South right of way boundary
intersects the West boundary of the city limits
of the City of Brownsville in Cameron County;
thence along the West city limits of the City
of Brownsville to the point where same inter-
sects the Rio Grande River, is hereby recogniz-
ed as an area in which white-winged doves and
chachlaca nest and propagate; and said area is
hereby set aside as a nesting and propagating
grounds for white-winged doves, chachalaca and
other game within which area it shall be unlaw-
ful at any time to hunt, take, shoot or kill
any kind or species of wild fowl hereinabove
mentioned."

You ask if the boundaries of the bird sanctuary attempt-
ed to be created by this Act are sufficient in view of the follow-
ing facts.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Prior to the passage by the State Highway Commission of Minute No. 16701 on September 26, 1939, Texas State Highway No. 4 was designated as follows:

"From Texas-Oklahoma state line near Perryton via Perryton, Canadian, Wheeler, Shamrock, Wellington, Childress, Paducah, Guthrie, Aspermont, Hamlin, Anson, Abilene, Tuscola, Ballinger, Eden, and Menard to Junction and from a connection with State Highway No. 41 via Lula, Leakey, Uvalde, Carrizo Springs to a connection with State Highway No. 2 near Webb City, and then follow State Highway No. 2 to Laredo and from Laredo via Roma, Rio Grande, Mission, LaFeria, Harlingen and Brownsville to Boca Chica."

Before this date, the State Highway Commission had ordered that all State Highways over which are routed United States Highways were to be numbered and recorded according to the United States Highway numbers. In the order entered September 26, 1939, all prior orders designating State Highways were superseded and cancelled. State Highway No. 4 was designated as being from Brownsville to Boca Chica. U. S. Highway No. 83 was recognized as being as follows:

"From the Texas-Oklahoma State Line near Perryton, via Perryton, Canadian, Wheeler, Shamrock, Wellington, Childress, Paducah, Guthrie, Aspermont, Hamlin, Anson, Abilene, Tuscola, Ballinger, Eden, Menard, Junction, Leakey, Uvalde, Crystal City, Carrizo Springs, Webb City, Laredo, Roma, Rio Grande, Mission, Pharr, and Harlingen to Brownsville."

We are advised officially that prior to the passage of these orders by the Highway Commission, there existed highway signs displaying both the United States Highway numbers and the State numbers. Following these orders the State number signs were discontinued on Highways in Texas which had been designated as United States highways.

Regarding former State Highway No. 4, it appears that that portion with which we are concerned was coincident with U. S. Highway No. 83. In consequence, by the passage of the order referred to, State Highway No. 4 from the Texas-Oklahoma line to Brownsville was changed from State Highway of State Highway No. 4 from Brownsville to Boca Chica was not a designated United States Highway, it remained State Highway No. 4.

All of the foregoing transpired prior to the enactment of House Bill No. 186 by the Forty-seventh Legislature. At the time of the enactment, State Highway No. 4 ran from Brownsville to Boca Chica. It does so at this time. The boundary line described by Section 5 of House Bill No. 186 is not marked as State Highway No. 4; it is marked only as U. S. Highway No. 83. If the highway now marked as State Highway No. 4, and which is now the official State Highway No. 4, if considered as the boundary line referred to in Section 5 of the Act, obviously the description of the boundaries of the game sanctuary will fall.

But is the highway now marked as State Highway No. 4 which extends from Brownsville to Boca Chica to be considered as the boundary line referred to by the Legislature in enacting House Bill No. 186? Obviously not. Such intent is completely rebutted by the other language employed in the statute. Note the allusion to "the common boundary line of Zapata and Starr Counties to the South boundary line of State Highway No. 4"; also where said right-of-way boundary "intersects the West boundary of the city limits of the City of Brownsville," etc. (Emphasis ours).

Reference to any accurate highway map will disclose only one highway as intersecting or crossing on "the common boundary line of Zapata and Starr Counties." Reference to the same map will further disclose that the present State Highway No. 4 does not intersect the West boundary of the city limits of Brownsville, but that U. S. Highway No. 83 does; State Highway No. 4 intersects the East boundary of Brownsville.

It is argued that since House Bill No. 186 is a penal statute, it must be strictly construed, that there is insufficient notice to the public to meet the requirements of certainty essential to validity of such penal enactment.

From Texas Jurisprudence we quote the following:

"The intention of the Legislature in enacting a law is the law itself, the essence of the law,' and 'the spirit which gives life' to the enactment. Hence, the aim and object of construction is to ascertain and enforce the legislative intent, and not to defeat, nullify or thwart it.

"When the intent is plainly expressed in the language of a statute, it must be given effect without attempting to construe or interpret the law. On the other hand, when it is necessary to construe an act in order to determine its proper meaning, it is settled by a host of decisions that the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment. Such intent having been ascertained, the court will then seek to construe the statute so as to give effect to the purpose of the Legislature, as to the whole and each material part of the law, even though this may involve a departure from the strict letter of the law as written by the Legislature.

"This is the fundamental canon and the cardinal, primary and paramount rule of construction, which should always be closely observed and to which all other rules must yield. Indeed, inthe construction of civil enactments, the courts are expressly commanded to 'look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy.' <u>And this rule is equally applicable in the construction of penal statutes.</u>

"<u>Intent to be given effect.</u>--Under the foregoing rules, when the legislative intent is ascertained, or is plainly manifest, it is binding upon the courts and must be given effect if it is legally possible to do so. To ignore the legislative intent and give a statute a construction obviously contrary thereto, or to refuse to enforce a statute according to the legislative intent, when ascertained, is said by the Supreme Court to be 'an inexcusable breach of judicial duty' and 'an unwarranted interference with the exercise of lawful legislative authority.'" (Underscoring ours). 39 Tex. Jur. 166, 190.

See also Article 7, Vernon's Annotated Penal Code and cases cited thereunder.

From McQuillin on Municipal Corporations, Vol 1, 2d Ed., Revised, 281, P. 769 at p. 770, we quote:

" * * *.  If the description of the boundaries
in a statute cannot be literally applied on account
of inaccuracy, the statute must receive a reason-
able construction in order to carry into effect
the intent of the legislature.  A description that
gives a definite location or that is sufficient
for identification will be sustained.  * * *."

In support of the statement in the text, citation is
made to the cases of P'Pool v. State, 93 Fla. 378, 112 So. 59;
Douglass v. Harrisville, 9 W. Va. 162, 27 Am. Rep. 548.

Coupled with the fact that until the order of September
26, 1939, the highway crossing the common boundary line of Starr
and Zapata Counties was officially designated and known as State
Highway No. 4, and the further fact that reference to the State
Highway Department official map will disclose no other public
highway crossing said county line, and is certainly the only high-
way from such intersection leading to the City of Brownsville, we
think the language of the statute is not so uncertain as to make
it impossible to determine the territory intended to be included
in the sanctuary, and that this construction comports with the
manifest intent of the statute.  Therefore, it is our opinion that
the section of the Act under consideration is valid; that the
boundaries of the bird sanctuary are definitely ascertainable and
the Act should be construed as though the Legislature had written
"United States Highway 83" in all places where by mistake the
words "State Highway 4" were actually used.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By

s/ Benjamin Woodall
Assitant

BW:RS

APPROVED AUG 22, 1941

s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE BY GWB CHAIRMAN